## Gulf, Mobile and Ohio Railroad Company, substituted for Henry A. Gardner, Trustee of the Alton Railroad Company, Appellant, v. Arthur Dixon Transfer Company, Appellee.

Gen. No. 45,108.

148

Opinion filed April 6, 1951. Released for publication May 8, 1951.

WINSTON, STRAWN, SHAW & BLACK, of Chicago, for appellant; DOUGLAS C. MOIR, EDWARD J. WENDROW, and NEIL MCKAY, all of Chicago, of counsel.

ECKERT, PETERSON & LEEMING, of Chicago, for appellee; A. R. PETERSON, HAROLD HUFF, and HERBERT C. LOTH, JR., all of Chicago, of counsel.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is an action in which plaintiff seeks to recover from defendant moneys paid by plaintiff's predecessors in interest (Alton Railroad Company and the Trustee thereof) in settlement of the claim of one Wehunt, a switchman. A motion to strike the second amended complaint was sustained and suit dismissed, from which order plaintiff appeals. Inasmuch as no point is made on the question of plaintiff's succession, we will in this opinion call plaintiff and its predecessors the "railroad."

On July 11, 1942 Wehunt was participating in the switching movement of a boxcar at the Harrison Street Yard of the railroad in Chicago and was standing on a ladder attached to the southeast corner of the boxcar as the car was moving. Defendant, a trucking contractor, had an agreement to do certain trucking for the railroad and in the performance of its duties would enter the yard and park its motor trucks for the purpose of receiving and delivering freight. At the time of the switching movement referred to, defendant had parked one of its trucks so close to the rail that Wehunt was caught between the truck trailer and the boxcar and was injured. He made a claim under the Federal Employers' Liability Act for injuries received and the railroad settled with him by paying $15,000 in addition to other sums advanced. Before making settlement, the railroad gave proper notice to defendant.

Defendant's motion to strike the second amended statement of claim alleged four grounds, the first two of which amount to a general demurrer, and it is on this that defendant relies. Plaintiff filed a motion to strike defendant's motion to strike on the ground that under Section 45 motions to strike should specifically point out defects. Therefore, the only point of pleading involved is whether under the Practice Act as it now stands a motion to strike which is tantamount to a general demurrer is permissible.

150

■■ Section 45 of the Civil Practice Act [Ill. Rev. Stat. 1949; Jones Ill. Stats. Ann. 104.045] specifically provides that all objections to pleadings heretofore raised by demurrer shall be raised by motion and that the motion shall point out specifically the defects complained of; that where a pleading is objected to on the ground that it is substantially insufficient in law, the motion must specify wherein such pleading is insufficient. The courts have sustained this provision of the Act and interpreted it to mean what it so clearly states. *Hitchcock v. Reynolds,* 278 Ill. App. 559, 562; *Messick v. Mohr,* 292 Ill. App. 69; *S. W. Coe and Company v. Douglass,* 334 Ill. App. 195; *Lederer v. St. Clair Hotel, Inc.,* 339 Ill. App. 214; *Anderson v. Olsen,* 293 Ill. App. 637; *Farmer v. Alton Building & Loan Association,* 294 Ill. App. 206; *Aaron v. Dausch,* 313 Ill. App. 524; *Carmack v. Great American Indemnity Co.,* 400 Ill. 93, 96; *People v. Shetler,* 318 Ill. App. 279. Defendant argues, however, that failure to state a cause of action sufficient in law is not susceptible of such particularity. With this we cannot agree. In its brief, defendant has set forth that the complaint shows the railroad was a volunteer; that the railroad's liability was not secondary within the meaning of the implied indemnity cases; that the railroad was guilty of active negligence; that defendant's negligence did not proximately cause the injury; that Wehunt was guilty of contributory negligence, etc. These points could all have been set forth in its motion. That is what is required by the Act. Prior to the Practice Act demurrers had come to have an odious synonymity with deliberate delay. In fact, we had a rule in our trial courts that counsel had to file an affidavit with a general or special demurrer swearing that it was not interposed for delay. That rule fell into innocuous desuetude. It was ineffective to stop demurrers filed for delay. We should not revive that time-dishonored practice. We do not mean to

imply that was the case here. We hold that motions to strike which are in the nature of general demurrers are not proper. Defendant argues as against this conclusion that plaintiff's failure to make out a case under its complaint may be challenged even after judgment. *Lasko v. Meier*, 394 Ill. 71. The court there said: "If, with all intendments in its favor, a complaint wholly and absolutely fails to state any cause of action at all, objection can be made to it for the first time on appeal. But, on the other hand, if the complaint states a cause of action, no matter how defectively or imperfectly alleged, and the same is not challenged below, then such defectively stated cause of action is cured by verdict and cannot be questioned on appeal." When challenged by a motion to strike, however, the rule is that the averments of the pleader are taken against him. Cases arising after verdict are not in point here.

Defendant presents a hypothetical case which illustrates how it may be difficult under circumstances to say anything more in a motion to strike than that the law does not recognize a cause of action such as that set forth. That is not the case before us. If that problem should arise we believe the talent and ingenuity which defendant's counsel has displayed in this case will serve to find a way out of such an extraordinary dilemma.

As the case must be tried on its merits, we will consider whether the second amended complaint states a case. The trial court gave no reasons for striking the complaint but undoubtedly it was on the supposition that the railroad was a tort-feasor seeking contribution from another and therefore could not recover on its theory of implied indemnity. There are many exceptions to the general principle of noncontribution between tort-feasors recognized by the courts of this and other states and by the federal courts.

The exceptions to the rule are embraced in four or five general groups. One is that a city has a right of

action against contractors or abutting owners for a liability which the city may have incurred to third persons for breach of its duty with respect to public ways. *Gridley v. City of Bloomington,* 68 Ill. 47; *City of Canton v. Torrance,* 151 Ill. App. 129; *Fahey v. Town of Harvard,* 62 Ill. 28; *Lowell v. Boston & Lowell R. R.,* 23 Pick. (Mass.) 24 (1839); *Washington Gas Light Co. v. District of Columbia,* 161 U. S. 316 (1895). The rule has been applied in nonmunicipal cases where the negligence of an outsider was the active cause of an injury and created the liability. *Snohomish County v. Great Northern Ry. Co.,* 130 F. (2d) 996; *Gray v. Boston Gas Light Company,* 114 Mass. 149 (1873); *Middlesboro Home Telephone Company v. Louisville & Nashville R. R. Company,* 214 Ky. 882, 284 S. W. 104. Cases where a stranger is hurt by a subcontractor or subtenant and the contractor or owner is given a right of action against the subcontractor. *Griffiths & Sons Company v. National Fireproofing Co.,* 310 Ill. 331; *Pfau v. Williamson,* 63 Ill. 17; *Chicago Railways Co. v. R. F. Conway Co.,* 219 Ill. App. 220; *Sherman House Hotel Co. v. Butler Street Foundry & Iron Co.,* 168 Ill. App. 549; *Oceanic Steam Navigation Company v. Compania Transatlantica Espanola,* 134 N. Y. 461. Cases where one, supplying goods or services, by his active negligence caused the liability. *Pennsylvania R. R. Co. v. Roberts & Schaefer Co.,* 250 Ill. App. 330; *Central of Georgia Railway Co. v. Macon Railway and Light Co.,* 140 Ga. 309, 78 S. E. 931; *Seaboard Air Line Railway Company v. American District Electric Protective Company,* 106 Fla. 330, 143 So. 316; *Fidelity & Casualty Company of New York v. Northwestern Telephone Exchange Company,* 140 Minn. 229, 167 N. W. 800; *Standard Oil Co. v. Robins Dry Dock & Repair Co.,* 32 F. (2d) 182; *Union Stockyards Co. v. Chicago B. & Q. Railroad Co.,* 196 U. S. 217. Cases where the negligence of a third party caused a liability under the Federal Employers' Liability Act, as in the instant

153

case, or under the Workmen's Compensation Law. *United States v. Chicago R. I. & P. Railway Co.,* 171 F. (2d) 377; *Booth-Kelly Lumber Co. v. Southern Pacific Railroad Co.,* 183 F. (2d) 902; *Staples v. Central Surety & Insurance Corp.,* 62 F. (2d) 650; *Stinchcomb v. Dodson,* 190 Okla. 643, 126 P. (2d) 257; *Ruby Lumber Co. v. Johnson,* 299 Ky. 811; *Foster & Glassell Co. v. Knight Bros.,* 152 La. 596. That all these classes of cases are related in principle and that the courts of Illinois so recognize appears clearly from the decision of the court in *Griffiths & Sons Co. v. National Fireproofing Co.,* 310 Ill. 331.

Two cases sustaining a right of action on implied indemnity, where liability under the Federal Employers' Liability Act was caused by the act of a third person, are *Booth-Kelly Lumber Co. v. Southern Pacific Railroad Co.,* 183 F. (2d) 902; and *United States v. Chicago, Rock Island & Pacific R. R. Co.,* 171 F. (2d) 377. The physical facts in both of those cases are almost identical with the instant case. In the *Booth-Kelly* case an indemnity agreement contained two provisions, one for full indemnity where the loss occurred solely by act of the defendant, and one for a division of the loss equally where it occurred through the concurring negligence of both parties. While the suit was based on the contract of indemnity, the court considered it necessary to determine the state of the common law in order to arrive at a correct interpretation of the contract. They said in substance that in practically all cases the occasion for seeking indemnity would not arise unless the indemnitee were himself guilty of some fault. Therefore, if the court were to assume that the existence of any negligence, whether it be active or passive, threw the case within the provision for sharing indemnity, there would be no case in which the indemnitor would be liable for the full amount. The court concluded that the provision for full indemnity

related to that group of cases where the railroad was guilty of only passive negligence and *would therefore at common law have a right of action against the indemnitor for the full amount;* that the provision for the sharing of indemnity applied to those cases where the parties were in *pari delicto.* Examining the facts under a common-law microscope the court held that while the railroad was negligent in a sense sufficient to create a liability under the Federal Employers' Liability Act, that negligence was of a passive character and the active negligence was that of defendant's employee in placing the wood cart so near the track that the railroad's employee was caught between the caboose and the cart. The case of *United States v. Chicago, R. I. & Pacific R. R. Co., supra,* is also indentical in facts with the instant case, except that the obstruction was a pile of material. The Circuit Court of Appeals found for the railroad on the same principle.

The case of *Pennsylvania R. Co. v. Roberts and Schaefer Company,* 244 Ill. App. 646, 250 Ill. App. 330, is strongly in point. In that case a railroad employee was injured by a faulty sanding machine installed by defendant. This court through Mr. Justice McSurely stated the applicable principle in these words: "Where a person has been compelled to pay damages on account of the negligence of a third party, the person so paying damages when he is without fault or negligence on his part and the injury is solely the result of the negligence of the third party, may recover such damages from the third party." The court went on to say that the declaration in that case, even though it alleged, as here, that plaintiff had been rendered liable to its employee because of its failure to provide a safe place to work, nevertheless contained the allegations necessary to make a case under that principle. The case was later tried on its merits and defendant was found not guilty. On appeal this court again reversed the judg-

155

ment and this time speaking through Mr. Justice O'Connor held that it was error for the trial court to instruct the jury that there was no contribution between joint tort-feasors, saying the parties were not in *pari delicto* and the rule which prevents contributions between joint tort-feasors did not apply.

██ The vast growth of negligence law has markedly changed the characteristics of negligence actions. Legal negligence no longer embodies a concept of misbehavior just short of the criminal or the immoral. The courts have, therefore, had to find a way to do justice within the law so that one guilty of an act of negligence—affirmative, active, primary in its character— will not escape scot-free, leaving another whose fault was only technical or passive to assume complete liability. In dealing with the question, the courts have had before them the problem stated in *Booth-Kelly v. Southern Pacific, supra,* that in practically all cases the indemnitee has himself been guilty of legal negligence. This led to some confusion in terms used. That the vocabulary of negligence law is not adequate for our day is apparent from the contemporary writings on the subject. Thus, in these decisions the courts say plaintiff (indemnitee) was without fault or that he was only technically negligent even though the liability was based on legal negligence. What is meant is that plaintiff by act of defendant was made liable for failing to discharge a responsibility even though he, plaintiff, was not guilty of any active negligence. In the instant case plaintiff has alleged in its complaint that it was not negligent and defendant says that if it were not negligent, then it was only a volunteer when it made payment to the injured switchman. From the facts set forth in the second amended complaint and the legal situation which confronted plaintiff we understand clearly that what it meant was that the railroad was guilty of only passive technical negligence and that the

156

active and primary negligence was that of defendant in placing its truck where it was a danger to plaintiff's employees. Examined in this light the second amended complaint states a case.

■■ It is argued by defendant that the switchman was guilty of contributory negligence. That is a question of fact for the jury. The complaint alleges that he was not and the facts set forth do not warrant the court's holding that we must infer contributory negligence as a conclusion of law.

Defendant has sought to distinguish the cases herein cited but while some distinction may always be made, we are of the opinion that the principle set forth amply covers the instant case. One case cited by defendant presents a state of facts which closely resembles the instant case, *Wallace v. New Orleans Public Belt R. Co.*, 78 F. Supp. 724. This was an opinion by a federal trial court. The Circuit Court of Appeals reversed the trial court on a jurisdictional ground. It is thus the opinion of a trial court which did not have jurisdiction of the case. Moreover, the opinion is not entirely clear as to the ground upon which it was made. The case of *Detroit G. H. & M. Ry. Co. v. Boomer*, 194 Mich. 52, cited by defendant has some similarity to the instant case. The court held that as the railroad was moving the train at the time of the accident it was actively negligent. We have already discussed the confusion arising in large part from the fact that the vocabulary of negligence law is wholly inadequate to meet its current complexities. Certainly the courts in the cases we have cited did not intend any such limited meaning for the phrase "passive or technical negligence." In *Pennsylvania R. R. Co. v. Roberts & Schaefer Co.*, 250 Ill. App. 330, the railroad was considered passively negligent although the railroad employee actively pulled a rope that brought down the weight on his fellow-employee. In *United States v. Chicago, Rock*

157

*Island & Pacific Ry. Co.,* 171 F. (2d) 377, a pile of material was the obstruction and the engine was moving, still the railroad was held to be only passively negligent. It is clear that mere motion does not define the distinction between active and passive negligence.

Some of the other cases cited by defendant are cases in which the action over was for workmen's compensation paid by plaintiff to one of its employees. Here the authorities are in conflict. Those that have denied the right to an action over by the employer have done so on an understanding of workmen's compensation which is best set forth in the case of *Interstate Telephone & Telegraph Co. v. Public Service Electric Co.,* 8 N. J. L. 26, 90 Atl. 1062 where it was said, "We cannot distinguish, in legal effect, this compensation agreed to be paid to the employee from the ordinary compensation called wages."

█ The oldest and most approved statement of the principle involved in this case is found in *Lowell v. Boston & Lowell Railroad Corp.,* 23 Pick. (Mass.) 24, as follows: "In respect to offenses in which is involved any moral delinquency or turpitude all parties are deemed equally guilty, and the courts will not inquire into their relative guilt; but where the offense is merely *malum prohibitum* and is in no respect immoral, it is not against the policy of the law to inquire into the relative delinquency of the parties and to administer justice between them although both parties are wrongdoers." This statement of the law has been approved by the Supreme Court of the United States and by the Supreme Court of Illinois, *Washington Gas Light Co. v. District of Columbia,* 161 U. S. 316, 327; *Griffiths & Sons Company v. National Fireproofing Company,* 310 Ill. 331, 338. The second amended complaint certainly states a case coming well within the broad outlines of this principle.

158

Judgment is reversed and the cause remanded with directions to overrule the motion of defendant to strike the second amended complaint, to require defendant to answer, and to hear the case on its merits.

*Judgment reversed and cause remanded with directions.*

FRIEND and SCANLAN, JJ., concur.